IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA IMMEL et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AMORE LIMITED PARTNERSHIP d/b/a ) <br> AMORE MANAGEMENT COMPANY ) <br> et al., ) <br> ) <br> Defendants. ) | Civil Action No. 16-1465 <br><br> Hon. Nora Barry Fischer |

**MEMORANDUM OPINION**

I. **Introduction**

Pending before the Court in this matter is Defendants' Motion to Dismiss for Lack of Jurisdiction. (Docket No. 5). Having considered Plaintiffs' Complaint, (Docket No. 1); Defendants' motion to dismiss and supporting briefing, (Docket Nos. 5, 7); Plaintiff's response in opposition, (Docket No. 8); and Defendants' reply, wherein Defendants rest upon their initial brief, (Docket No. 13), Defendants' motion to dismiss is DENIED.

II. **Background**

This matter arises from Plaintiff's residence at Fifth Neville Apartments ("Fifth Neville"). The following pertinent facts are alleged in the Complaint, which the Court will accept as true for the sole purpose of deciding the pending motion.

Plaintiff, who is twenty-two years old, has been diagnosed with a general anxiety disorder. (Docket No. 1 at ¶ 3). As a result, Plaintiff experiences excessive anxiety and difficulty regulating her emotions. (*Id.*). In 2012, Plaintiff relocated to Pittsburgh from Ohio

1

and resided with her fiancé at Fifth Neville, which has a no-pet policy and is managed by Defendant Amore Limited Partnership d/b/a Amore Management Company ("Amore"). (*Id.* at ¶¶ 9-10). After moving to Pittsburgh, Plaintiff received treatment from Antoinette Montgomery, a Licensed Marriage and Family Therapist. (*Id.* at ¶ 11). In December 2015, Ms. Montgomery prepared a letter verifying that Plaintiff qualified as a person with a disability under the Fair Housing Act and stating that "an emotional support animal will significantly help in alleviating [her] symptoms and will enhance her ability to live independently." (*Id.* at ¶ 12). Plaintiff provided Amore with Ms. Montgomery's letter and requested permission for an emotional support dog to live with her at Fifth Neville. (*Id.* at ¶ 13). In a letter dated January 4, 2016, Amore requested that Ms. Montgomery provide additional information by completing an enclosed form. (*Id.* at ¶ 14). Ms. Montgomery completed the form and attached a letter further detailing the nature of Plaintiff's disability. (*Id.* at ¶¶ 15-17).

In a letter dated February 10, 2016, Amore denied Plaintiff's request, stating that she had failed to demonstrate that the "emotional impediments and environmental stressors impacting on [her] are not or cannot be adequately addressed based upon the existence of [her] relationship with her significant other with whom [she is] living." (*Id.* at ¶ 18). Plaintiff forwarded an e-mail from Ms. Montgomery to Amore in which Ms. Montgomery stated that Plaintiff's living arrangement with her fiancé was irrelevant to her need for an emotional support animal. (*Id.* at ¶ 19). On March 21, 2016, a second medical professional, Jennifer Melegari, CNP of Union Physician Services, sent a letter to Amore in which she verified Plaintiff's disability and stated that she had prescribed an emotional support animal. (*Id.* at ¶ 20). On April 7, 2016 and May 25, 2016, Ms. Melegari responded to Amore's requests for additional information. (*Id.* at ¶¶ 21-23). As a result of Amore's denial of Plaintiff's request, the emotional support dog lived with

Plaintiff's mother in Ohio from December 2015 to June 2016. (*Id.* at ¶ 25). In June 2016, Plaintiff moved to Lindenbrooke, a different property managed by Amore, which permits pets. (*Id.* at ¶ 27). Because Amore has not approved Plaintiff's request, her emotional support dog is considered an ordinary pet and is prohibited from accompanying Plaintiff in the common areas at Lindenbrooke. (*Id.* at ¶ 28).

Plaintiff further alleges that through an audit test conducted in November 2014, the Fair Housing Partnership ("FHP") was made aware of Amore's discriminatory policies regarding requests for emotional support animals. (*Id.* at ¶ 32). FHP conducted a series of controlled tests through which testers contacted Amore's properties seeking to rent a unit as a person with an emotional support dog and as a person without one. (*Id.* at ¶ 33). FHP found that when testers requested an emotional support dog, the property manager contacted Amore's corporate office, which would decline the request. (*Id.* at ¶ 34). In July 2015, FHP conducted additional audit testing which showed that Amore masked its practice of denying emotional support dogs by initially granting reasonable accommodation requests but requiring approval by the corporate office. (*Id.* at ¶ 35). On February 13, 2016, Plaintiff contacted FHP regarding Amore's denial of her request for an emotional support dog. (*Id.* at ¶ 36). FHP's testing of Fifth Neville revealed that Amore's policy is for a housing application to be approved by its corporate office before a reasonable accommodation can be requested. (*Id.* at ¶ 37).

Plaintiff filed this action on September 23, 2016, alleging a claim against Defendants under Title VIII of the Civil Rights Act of 1968 for the violation of the Fair Housing Act, 42 U.S.C. §§ 3604(f)(2) and 3604(f)(3)(B). (*Id.* at ¶¶ 41-42). Defendants filed a Motion to Dismiss for Lack of Jurisdiction and supporting brief on November 16, 2016. (Docket Nos. 5, 7). Plaintiff filed her Brief in Opposition to Defendants' Motion on December 7, 2016. (Docket No.

8). Defendants filed a Reply Brief, wherein they rest upon their initial brief, on January 4, 2017. (Docket No. 13). This matter is now ripe for disposition.

## III. Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 556-57; *Iqbal*, 556 U.S. at 678.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court

4

should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### IV. Discussion

In their Motion to Dismiss for Lack of Jurisdiction, Defendants argue that Plaintiff's action must be dismissed because she failed to exhaust her administrative remedies prior to filing her Complaint. (Docket No. 7 at 6-11). Specifically, Defendants assert that Plaintiff did not file a complaint with the Secretary of Housing and Urban Development ("HUD") or with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* at 7). After noting that "[t]here are no reported cases in the Third Circuit or decisions from the district courts in Pennsylvania as to whether one must exhaust their administrative remedies," Defendants state that they "are of the position" that the Court lacks subject matter jurisdiction. (*Id.* at 7-8). In response, Plaintiff argues that the plain language of the Fair Housing Act and the supporting case law provide that an individual may file an action without pursuing administrative remedies. (Docket No. 8 at 3-4). In their reply, Defendants rest upon their initial brief. (Docket No. 13 at 2).

5

Defendants' argument is meritless. Other than stating that they "are of the position" that the Court lacks subject matter jurisdiction, Defendants identify no support for their argument. Indeed, as Plaintiff notes, the case law to which Defendants cite relates to the exhaustion of administrative remedies in Title VII employment cases. (*See* Docket No. 7 at 8). Plaintiff's claim arises under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, which prohibits housing discrimination based on "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). It also prohibits housing discrimination based upon the handicap of a buyer or renter. *Id.* § 3604(f). In pertinent part, prohibited practices under the Fair Housing Act include discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling. *Id.* § 3604(f)(2). The statute also makes it unlawful, in the case of disabled persons, to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B).

Pursuant to the plain language of the Fair Housing Act and the well-settled law of the United States Court of Appeals for the Third Circuit, an aggrieved person is not required to exhaust his or her administrative remedies before filing a civil action. As the Third Circuit has stated, "[e]nforcement [of the Fair Housing Act] is accomplished in two ways that are relevant here: administrative enforcement under 42 U.S.C. § 3610, and private enforcement under section 3613." *Mitchell v. Cellone*, 389 F.3d 86, 90 (3d Cir. 2004). After determining that the plain language of §§ 3610 and 3613 needed no interpretation, the Third Circuit explained that "[u]nder section 3610, an aggrieved person may file a complaint with the Secretary of HUD alleging a discriminatory housing practice," while "section 3613 allows for a civil cause of action in either State or Federal court within two years after any alleged housing discrimination, whether or not

an administrative complaint has been filed under section 3610." *Id.* at 89-90 (footnote omitted). Thus, the Third Circuit held that "the plain language of sections 3610 and 3613 state that a dual enforcement scheme exists that allows an aggrieved party to pursue both private and administrative enforcement until such time as either avenue has achieved resolution of the claim." *Id.* at 90. After examining the Fair Housing Act's legislative history, the Third Circuit further stated that "Congress envisioned that a complainant could sue through HUD and its state commission counterparts *or* initiate litigation privately: the choice of one alternative would not foreclose the other avenue of redress." *Id.* at 91 (emphasis in original).

The Third Circuit's well-reasoned decision in *Mitchell* makes clear that Plaintiff was not required to exhaust her administrative remedies before filing this action. Indeed, District Courts applying *Mitchell* have concluded that "the Fair Housing Act does not require that an aggrieved person exhaust his or her administrative remedies before filing a civil action, nor does it require that Plaintiff select one avenue to the exclusion of the other." *Mitchell v. Walters*, No. 10-CV-1061, 2010 U.S. Dist. LEXIS 93265, at *17 (D.N.J. Sept. 8, 2010); *see also Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 550 (3d Cir. 2006) (noting that the appellant had correctly stated "that the state court has concurrent jurisdiction over her [FHA] claims and that she is not required to exhaust her administrative remedy before proceeding in state (or federal) court"); *Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307, 320 n.9 (E.D. Pa. 2001) ("It is well settled that plaintiffs are not required to exhaust FHAA claims."); *Sokoya v. 4343 Clarendon Condo Ass'n & John Polacek*, No. 96-CV-5278, 1996 U.S. Dist. LEXIS 17879, at *12 (N.D. Ill. Nov. 19, 1996) ("Under the FHA, a plaintiff does not need to pursue any administrative remedies before filing suit. 42 U.S.C. § 3613(a)(1). The opposite is true of Title VII and the ADEA, a

factor the Supreme Court considers particularly important."). As such, Defendants' argument is wholly without merit.

To the extent that Defendants argue that Plaintiff has failed to file a complaint with the PHRC, (*see* Docket No. 7 at 8-9), Plaintiff has not alleged any violations of the Pennsylvania Human Relations Act. Rather, Plaintiff has only alleged a claim against Defendants under the Fair Housing Act, 42 U.S.C. §§ 3604(f)(2) and 3604(f)(3)(B). (Docket No. 1 at ¶¶ 41-42). As discussed above, Plaintiff was not required to exhaust her administrative remedies before asserting a claim under the Fair Housing Act. Thus, the Court must also reject Defendants' alternative argument that Plaintiff's claim is not ripe because she has not filed for an administrative review of the facts. (*See* Docket No. 7 at 9-11). Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction will be denied.

V. **Conclusion**

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss for Lack of Jurisdiction. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record