**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

VICTORIA IMMEL

and

FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH,

Plaintiffs,

v.

Case No.: 2:16-cv-1465-NBF

AMORE LIMITED PARTNERSHIP d/b/a AMORE MANAGEMENT COMPANY,

and

FIFTH-NEVILLE APTS INC.,

Defendants.

**JURY DEMANDED**

# FIRST AMENDED COMPLAINT

Plaintiffs bring this action for declaratory judgment, permanent injunctive relief and damages for discrimination on the basis of disability in the rental of housing. This action arises under Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 et seq. ("Fair Housing Act"). This action is brought on behalf of Victoria Immel and Fair Housing Partnership of Greater Pittsburgh, pursuant to 42 U.S.C. § 3612(o).

**Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that Defendants reside in this district, and the acts and omissions giving rise to this action occurred in this district.

**Parties**

3. Plaintiff Victoria Immel is a 22 year-old person with a disability, as she has been medically diagnosed with general anxiety disorder. As a result of her disability, Ms. Immel experiences excessive anxiety and difficulty regulating her emotions. Ms. Immel requires the use of an emotional support dog to mitigate these symptoms, as prescribed by her licensed therapist. Ms. Immel resided at an apartment in Fifth Neville located at 4705 Fifth Ave, in Pittsburgh, PA from June of 2015 to June of 2016 (hereinafter "Fifth Neville"). In June 2016, Ms. Immel transferred to an apartment in Lindenbrooke located at 300 Castle Drive, in Bethel Park, PA (hereinafter "Lindenbrooke"). In early 2017, Ms. Immel moved out of Lindenbrooke.

4. Plaintiff Fair Housing Partnership of Greater Pittsburgh (hereinafter "Fair Housing Partnership" or "FHP") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 2840 Liberty Avenue, Suite #205, Pittsburgh, PA. FHP is dedicated to creating equal housing choices in western Pennsylvania through fair housing advocacy and comprehensive housing counseling services. FHP engages in activities to identify barriers to fair housing in western Pennsylvania and to help counteract and eliminate any such discriminatory

housing practices. FHP also takes steps necessary to protect the rights of individuals to enjoy the benefits of living in an integrated community.

5. In support of its goals, FHP engages in a variety of educational, counseling and referral services throughout Pittsburgh and the surrounding areas, and conducts tests for housing discrimination throughout those areas.

6. Many individuals bring complaints of housing discrimination to FHP. FHP counsels these individuals on the options available to them to obtain access to housing and refers them to appropriate government and community agencies for assistance. In addition, FHP conducts tests in response to these complaints. These testing activities are an important source of information for FHP's community education programs and enhance the effectiveness of FHP's counseling and referral services by increasing the supply of available housing to all protected classes.

7. Defendant Amore Limited Partnership, d/b/a Amore Management Company (hereinafter, "Amore") is a real estate management company. It is a domestic limited partnership headquartered at 4130 Monroeville Boulevard, Monroeville, PA 15146. Amore manages numerous apartment buildings throughout the Pittsburgh metropolitan area, including Fifth Neville and Lindenbrooke, where Ms. Immel previously resided.

8. Defendant Fifth-Neville Apts Inc. is a domestic corporation headquartered at 428 Forbes Avenue, Suite 1906, Pittsburgh, PA 15219. Defendant owns an apartment building located at 4705 Fifth Avenue, Pittsburgh, PA 15213, where Ms. Immel previously resided. Upon information and belief, Fifth-Neville Apts Inc. retains Amore to manage this property.

## Facts

*Victoria Immel*

9. In 2012, Plaintiff Victoria Immel relocated from Ohio to Pittsburgh in order to attend school.

10. Ms. Immel lived with her fiancé at Fifth Neville from June 2015 until June 2016. Fifth Neville has a no pet policy.

11. After moving to Pittsburgh, Ms. Immel began treating with mental health professional Antoinette Montgomery, a Licensed Marriage and Family Therapist, for general anxiety disorder.

12. In December 2015, Ms. Montgomery wrote a letter verifying that Ms. Immel qualified as a person with a disability under the Fair Housing Act and that, "an emotional support animal will significantly help in alleviating [Ms. Immel's] symptoms and will enhance her ability to live independently."

13. Ms. Immel submitted this verification letter to Amore and requested permission to allow her emotional support dog to live with her at Fifth Neville.

14. In a letter dated January 4, 2016, Amore sent Ms. Montgomery a form requesting additional information about Ms. Immel's disability and need for an emotional support animal.

15. Ms. Montgomery completed and returned the form to Amore. Her reply reiterated that Ms. Immel had a disability, and that the emotional support animal was necessary due to that disability.

16. The form also asked, "[I]s this animal required if Immel is not living independently?" To which Ms. Montgomery replied, "yes."

17. Ms. Montgomery elaborated on her answers to Amore's questions in a letter dated January 13, 2016. This letter further detailed the nature of Ms. Immel's disability, and recommended "that Ms. Immel be allowed to live with her ESA[1] to reduce overall frequency, intensity, and duration of anxiety so that daily functioning is not impaired and to enhance her ability to effectively cope with the full variety of life's anxieties. An ESA will assist in removing emotional impediments and environmental stressors to allow for improved well-being."

18. In a letter dated February 10, 2016, Amore informed Ms. Immel that it was denying her request for an emotional support animal on the grounds that Ms. Montgomery had not established that, "emotional impediments and environmental stressors impacting on [Ms. Immel] are not or cannot be adequately addressed based upon the existence of [her] relationship with her significant other with whom [she is] living."

19. Subsequently, Ms. Immel forwarded an email from Ms. Montgomery to Amore, explaining that Ms. Immel's living arrangements with her significant other were irrelevant to her need for an emotional support animal. This email also informed Amore that she had already provided more information than is required by the Fair Housing Act in order to verify a request for a support animal.

---

[11] Emotional Support Animal.

[2] A 2013 memorandum from the Department of Housing and Urban Development offers the following guidance regarding Emotional Support Animals:

> Housing providers are to evaluate a request for a reasonable accommodation to possess an assistance animal in a dwelling using the general principles applicable to all reasonable accommodation requests. After receiving such a request, the housing provider must consider the following:
>
> 1. Does the person seeking to use and live with the animal have a disability — i.e., a

20. On March 21, 2016, Ms. Immel had a second medical professional, Jennifer Melegari, CNP, of Union Physician Services, send a letter to Amore, verifying that Ms. Immel was a person with a disability. The letter also stated, "Due to mental illness, Victoria has certain limitations regarding social interactions, leaving her apartment, being at home alone, coping with stress, anxiety and panic attacks. In order to help alleviate these difficulties, and to enhance her ability to live independently and to fully use and enjoy the dwelling unit you own, I am prescribing an emotional support animal that will assist Victoria in coping with her mental illness and disability."

21. Amore again requested additional information. On April 7, 2016, Ms. Melegari faxed a reply to these questions, again stating that Ms. Immel is disabled, and that the requested accommodation was necessary due to her disability. Additionally, Ms. Melegari replied "yes" to the question, "Is the animal required if Ms. Immel is not living independently?"

22. In a letter dated May 11, 2016, Amore yet again requested additional information asking Ms. Melegari to verify: a) that Ms. Immel's employer allowed her to have her dog at work; b) that Ms. Immel had moved into Fifth Neville Apartments in 2013; c) that Ms. Melegari had not personally observed Ms. Neville with her dog, and; d) that the dog was living in the Fifth Neville Apartments.

23. Ms. Melegari's reply, dated May 25, 2016, explained: a) that Ms. Immel's employer would only allow her to bring the companion animal to work if it was allowed in her residence as a support animal; b) that Ms. Immel had lived at Fifth Neville since 2013; c) that she had not observed Ms. Immel with her dog, as there was no reason for

her to do so, and; d) that the dog was not living at Fifth Neville due to Amore's continued refusal to allow Ms. Immel to have a service animal in the apartment.

24. Amore's ongoing requests for additional information are overly burdensome, needlessly intrusive, and go well beyond the information needed to determine if a tenant has a legal right to a service animal.[2]

25. From December 2015 to June 2016, due to Amore's denial of Ms. Immel's reasonable accommodation request, her emotional support dog lived with her mother in Ohio.

26. In carrying out the aforementioned actions, Amore acted with the consent of, under the control of, and/or within their actual and/or apparent authority as agent of Fifth-Neville Apts Inc.

---

[2] A 2013 memorandum from the Department of Housing and Urban Development offers the following guidance regarding Emotional Support Animals:

> Housing providers are to evaluate a request for a reasonable accommodation to possess an assistance animal in a dwelling using the general principles applicable to all reasonable accommodation requests. After receiving such a request, the housing provider must consider the following:
>
> 1. Does the person seeking to use and live with the animal have a disability — i.e., a physical or mental impairment that substantially limits one or more major life activities?
>
> 2. Does the person making the request have a disability-related need for an assistance animal? In other words, does the animal work, provide assistance, perform tasks or services for the benefit of a person with a disability, or provide emotional support that alleviates one or more of the identified symptoms or effects of a person's existing disability?
>
> If the answer to question (1) or (2) is "no," then the FHA and Section 504 do not require a modification to a provider's "no pets" policy, and the reasonable accommodation request may be denied.
>
> Where the answers to questions (1) and (2) are "yes," the FHA and Section 504 require the housing provider to modify or provide an exception to a "no pets" rule or policy to permit a person with a disability to live with and use an assistance animal(s) in all areas of the premises where persons are normally allowed to go, unless doing so would impose an undue financial and administrative burden or would fundamentally alter the nature of the housing provider's services…

27. In June 2016, Ms. Immel moved to Lindenbrooke, a different property managed by Amore, which allows pets. As a result, Ms. Immel was permitted to have her emotional support dog live with her.

28. However, Ms. Immel's request to be allowed an emotional support dog was never approved. As a result, Ms. Immel's emotional support dog was considered an ordinary pet by Amore and was subject to the same policy regarding ordinary pets. For example, her emotional support dog was prohibited from being with her in some common areas at Lindenbrooke.

29. As a result of Amore's actions described above, Ms. Immel suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, anxiety, stress, and a deprivation of her right to equal housing opportunities.

30. In engaging in the unlawful conduct described above, Amore acted intentionally and maliciously to infringe on the rights of Ms. Immel in violation of the Fair Housing Act.

*Fair Housing Partnership*

31. In addition, Amore's continuing discriminatory actions have caused and are continuing to cause harm to FHP by, inter alia, interfering with the efforts and programs of FHP which are intended to bring about equality of opportunity in housing and forcing FHP to devote scarce resources to identify and counteract Amore's unlawful housing practices.

32. In November 2014, FHP was made aware, via an audit test, of Amore's discriminatory policies regarding reasonable accommodation requests for emotional support animals.

33. FHP conducted a series of controlled tests in which testers contacted Amore's properties seeking to rent a unit as a person with an emotional support dog, and as a person without an emotional support dog.

34. FHP found that once testers requested an emotional support dog accommodation, the property manager would contact Amore's corporate office, who would decline the request.

35. In July 2015, FHP conducted further audit testing which showed that Amore properties had masked their practice of denying emotional support dogs by initially granting the reasonable accommodation requests but requiring approval by their corporate office, or requiring that a housing application be approved before a reasonable accommodation could be requested.

36. On February 13, 2016, Ms. Immel contacted FHP regarding her denied reasonable accommodation request for an emotional support dog at Fifth Neville.

37. In response, FHP conducted further testing of Fifth Neville, which showed that Amore's policy is for a housing application to be approved by their corporate office before a reasonable accommodation can be requested.

38. FHP's multiyear testing results are consistent with Ms. Immel's experience in that Amore's corporate office ultimately does not grant reasonable accommodation requests for emotional support animals.

39. Due to Amore's denial of reasonable accommodation requests, FHP has diverted its resources to identify and investigate the violations outlined above, and as a result, its mission of ensuring equal housing opportunities in the greater Pittsburgh area has been frustrated.

40. Amore has discriminated against Ms. Immel on the basis of disability status and has interfered with the rights of FHP, all in violation of the Fair Housing Act.

## Cause of Action

### Fair Housing Act
### (42 U.S.C. Section 3604(f)(2) and 42 U.S.C. Section 3604(f)(3)(B))

41. Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

42. The foregoing actions of defendants Amore and Fifth Neville Apartments, Inc. constitute discrimination due to disability and a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(B).

## Prayer for Relief

WHEREFORE, Plaintiffs pray:

(a) That the Court declare the actions of Defendants complained of herein to be in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq.;

(b) That Defendants be ordered to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in again by it or any of its agents;

(c) That Defendants, their agents, employees, and successors be permanently enjoined from discriminating on the basis of disability status against any persons in violation of the Fair Housing Act of 1968, as amended;

(d) That appropriate punitive and compensatory damages be awarded to Plaintiffs and against Defendants;

(e) That Plaintiffs be awarded their costs and reasonable attorneys' fees in this action; and

(f) That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Dated: February 24, 2017

Respectfully Submitted,

*/s/ Carlos R. Diaz*

Carlos R. Diaz (PA 205177)
cdiaz@smalawgroup.com
**STEWART, MURRAY & ASSOC. LAW GROUP, LLC**
437 Grant Street, Suite 600
Pittsburgh, PA 15219
Phone: (412) 765-3345
Fax: (412) 765-3346
www.smalawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2017, a true and correct copy of the foregoing *First Amended Complaint* was served upon all counsel of record via the court's electronic filing system.

By: */s/ Carlos R. Diaz*

Carlos R. Diaz