Jordan D. Cunningham, Esquire
Cunningham, Chernicoff & Warshawsky, P.C.
P.O. Box 60457
Harrisburg, PA 17106-0457
Telephone: 717-238-6570
Facsimile: 717-238-4809
Email: jcunningham@cclawpc.com

**UNITED STATES DISTRICT COURT**
**for the**
**Western District of Pennsylvania**

| | | |
|---|---|---|
| **VICTORIA IMMEL and FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH,** **Plaintiffs** | : | **Civil Action No. 16-1465** |
| **v.** | : | |
| **AMORE LIMITED PARTNERSHIP d/b/a AMORE MANAGEMENT COMPANY and FIFTH-NEVILLE APTS INC.,** **Defendants** | : | **Jury Trial Demanded** |

# ANSWER WITH AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

AND NOW, comes your Defendants, Amore Limited Partnership d/b/a Amore Management Company and Fifth-Neville Apartments, Inc., by and through their counsel, Cunningham, Chernicoff & Warshawsky, P.C., who files this Answer with Affirmative Defenses to the First Amended Complaint filed in this matter together with a Counterclaim a statement of which is as follows:

## JURISDICTION AND VENUE

1. The averments of Paragraph 1 are admitted.

2. The averments of Paragraph 2 are admitted.

## PARTIES

3. The averments of Paragraph 3 are partially admitted and partially denied. It is admitted that Plaintiff, Victoria Immel, is a 22 year old individual. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment that Plaintiff Immel is a disabled person as that term is defined by the Fair House Act or that Plaintiff Immel experiences excessive anxiety and difficulty in regulating her emotions. Further, Defendants are without knowledge or information sufficient to form a belief as to whether Plaintiff Immel requires the use of an emotional support dog to mitigate the symptoms of anxiety and the difficulty she has in regulating her emotions or that she needed to be prescribed an emotional support dog.

It is also admitted that Plaintiff Immel has resided in an apartment in Fifth-Neville located at 4705 Fifth Avenue in Pittsburgh, Pennsylvania from June 2015 to June 2016. Plaintiff Immel resides with her significant other, Dylan Knight, who was employed as the Resident Manager at Fifth-Neville while he attended graduate school to obtain his MBA. It is admitted that on June 1, 2016, Plaintiff Immel executed a Lease Agreement together with Dylan Knight for an apartment located at Lindenbrooke located at 330 Castle Drive, Bethel Park, Pennsylvania. It is admitted Plaintiff vacated her apartment unit located at Lindenbrooke in late 2016 and/or early 2017.

4. The averments of Paragraph 4 are partially admitted and partially denied. The identity of Fair Housing Partnership of Greater Pittsburgh as being a non-profit corporation organized under the laws of Pennsylvania with a place of business at 2840 Liberty Avenue, Suite 205, Pittsburgh, PA is admitted. To the contrary, however, the remaining balance of the averments of Paragraph 4 as concerns the Fair Housing Partnership's mission and efforts it takes on the part of the community are denied as Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

5. The averments of Paragraph 5 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

6. The averments of Paragraph 6 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

7. The averments of Paragraph 7 are admitted.

8. The averments of Paragraph 8 are admitted.

## FACTS

*Victoria Immel*

9. The averments of Paragraph 9 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

10. The averments of Paragraph 10 are partially admitted and partially denied. It is admitted that Plaintiff Immel lived with her finance, Dylan Knight, at Fifth-Neville and Fifth-Neville, which apartment complex has a no pet policy.

11. The averments of Paragraph 11 are partially admitted and partially denied. It is admitted that Plaintiff Immel referred the Defendants to an Antoinette Montgomery. Ms. Montgomery's office is located in San Diego, California. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to how Plaintiff Immel "found" Ms. Montgomery or whether, in fact, Ms. Montgomery ever "treated" Plaintiff Immel for any disorder as Defendants are without knowledge or information sufficient to form a belief to such averment and strict proof thereof, if relevant, is demanded at the time of trial.

12. The averments of Paragraph 12 are partially admitted and partially denied. It is admitted that in December 2015, Defendants received from an Antoinette Montgomery a letter dated December 14, 2015. It is admitted that Ms. Montgomery stated in her letter, "An emotional support animal will significantly help in alleviating Victoria's symptoms, and will enhance her ability to live independently and to fully use and enjoy the dwelling unit you own and/or administer." It is admitted that Ms. Montgomery stated, "Ms. Immel has been assessed by me and meets the functional limitations imposed by her disability," whatever that assessment and conclusion means. Ms. Montgomery also stated, "She meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973." To the contrary, however, Ms. Montogmery's letter never states that Plaintiff Immel's condition substantially limits or restricts one or more of Plaintiff Immel's major life activities or that Plaintiff Immel's major life activities were restricted as to the conditions, manner, or duration under which they can be performed in comparison to most persons. Ms. Montgomery's letter

never stated that Plaintiff Immel's mental or psychological disorder was of such a magnitude that it substantially limited one or more of her major life activities, which is the essence of the ADA and Fair Housing Standard and Rehabilitation Act of 1973 definition of a "disabled" individual.

13. The averments of Paragraph 13 are admitted.

14. The averments of Paragraph 14 are partially admitted and partially denied. It is admitted that on or about January 4, 2016, Defendant Amore forwarded to Ms. Montgomery a combination form and letter, which form and letter not only made inquires regarding the manner in which Plaintiff Immel's condition met the definition of "disabled" under applicable law, but contained an inquiry asking Ms. Montgomery to explain the nexus between Ms. Immel's disability and the function of the therapy animal.

15. The averments of Paragraph 15 are partially admitted and partially denied. It is admitted Ms. Montgomery returned the form and indicated that Ms. Immel was disabled. To the contrary, however, Ms. Montgomery never set out or explained the nexus between Ms. Immel's disability and the function of the emotional support animal.

16. The averments of Paragraph 16 are admitted.

17. The averments of Paragraph 17 are partially admitted and partially denied. It is admitted that Ms. Montgomery in her correspondence of January 13, 2016 stated that she was of the belief that allowing an emotional support animal to live with Plaintiff Immel would reduce the overall frequency, duration and intensity of anxiety so that daily function would not be impaired and would enhance her ability to effectively cope with a full variety of life's anxieties. Ms. Montgomery also stated that an emotional support animal would assist in removing

emotional impediments and environmental stressors impacting on Plaintiff Immel to allow for improved well being. Ms. Montgomery, however, stated the following which made little, or no, sense:

> "Her anxiety, worry, and physical symptoms cause clinically significant distress or impairment in social, occupational, and other important areas of functioning, specifically in academia."

Plaintiff Immel, to the best of Defendants' knowledge, was not involved in academia.

Moreover, Ms. Montgomery was not specific about Plaintiff Immel having difficulty accomplishing her daily independent living tasks. Ms. Montgomery's letter stated the following:

> "Ms. Immel may have much difficulty accomplishing her daily independent living tasks as well as socializing with others to establish a positive, social support system. Psychologically, Ms. Immel's moods and self-esteem may be impaired due to her disabling condition which makes coping effectively with daily frustrations and stressors difficult." (emphasis provided)

The letter was conditional and did not specifically state that Plaintiff Immel's condition caused her to have difficulty in accomplishing independent daily living tasks or socialization with others and did not state that Plaintiff Immel's moods and self-esteem were impaired due to a disabling condition.

The letter also stated a conclusion that Plaintiff Immel's condition met the definition of "disability" but never identified how Plaintiff Immel's condition substantially limited one or more of her major life activities. Finally, the letter never explained the nexus between Plaintiff's Immel's disability and the function of the emotional support animal.

18. The averments of Paragraph 18 are partially admitted and partially denied. It is admitted that Defendant Amore on February 10, 2016 forwarded a letter to Plaintiff Immel. In its letter, Amore advised Plaintiff Immel that it was unable to determine from Ms. Montgomery's

report that there was a link between Plaintiff Immel's disability and the need for the service to be provided by the emotional support animal. The letter also identified that while Ms. Montgomery had set out how the emotional impediments and environmental stressors impacted upon Plaintiff Immel's well being, she did not explain how those stressors could not be adequately addressed by her relationship with her significant other, with whom she was residing. The letter concluded that while Defendant Amore was declining the request for reasonable accommodation, Plaintiff Immel could submit additional information in support of her request.

19. The averments of Paragraph 19 are partially admitted and partially denied. It is admitted on February 19, 2016 Plaintiff Immel provided Defendant with an email from Ms. Montgomery. It is admitted that Ms. Montgomery expressed her opinion that Ms. Immel's living with a significant other did not mean her emotional need for a companion animal and it was her opinion that her prior letter had surpassed the requirements of the Fair Housing Act. To the contrary, however, Ms. Montgomery's previous letter had not addressed the issue of the nexus between Ms. Immel's disability and the function of the companion animal. This is a critical aspect of a housing provider's analysis of a request for a reasonable accommodation.

The Joint Statement of the Department of Housing and Urban Development and the Department of Justice dated May 17, 2004 regarding "Reasonable Accommodations Under the Fair Housing Act" states the following:

> ...in response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability (i.e., has a physical or mental impairment that substantially limits one or more major life activities); (2) describes the needed accommodation; and (3) shows the relationship between the person's disability and the need for the requested accommodation."

Page 13.

The issue of the relationship of Ms. Immel's disability and the need for the companion animal was never addressed by Ms. Montgomery, leaving the request for reasonable accommodation open and incomplete.

20. The averments of Paragraph 20 are partially admitted and partially denied. It is admitted that Defendant Amore received a letter dated March 21, 2016 from Jennifer Melegari, a certified nurse practitioner associated with Union Physician Services. The letter stated in a conclusionary manner that Plaintiff Immel suffered from mental illness and she met the definition of disability under the Americans with Disability Act, the Fair Housing Act, and the Rehabilitation Act of 1973.

To the contrary, however, the quote contained in Paragraph 20 of the First Amended Complaint is denied as being accurately set forth. The letter stated, "Due to mental illness, Victoria has certain limitations regarding social interactions, leaving her apartment, being at home alone, coping with stress, anxiety, and panic attacks." The letter went onto state that Ms. Melegari was prescribing an emotional support animal in order to enhance Ms. Immel's ability to live independently and to fully use and enjoy the dwelling unit managed and owned by the Defendants.

21. The averments of Paragraph 21 are partially admitted and partially denied. On April 1, 2016, Defendant Amore acknowledged receipt of Ms. Melegari's letter dated March 21, 2016 and requested Ms. Melegari to fill out a standard form questionnaire it had developed in response to all requests for reasonable accommodations. At the end of the form, Ms. Melegari was requested to establish a link between Plaintiff Immel's disability and the need for the

services provided by the emotional support animal in light of Plaintiff Immel's living and working circumstances.

It is admitted that on or about April 7, 2016, Ms. Melegari faxed a reply to the questionnaire. Ms. Melegari answered the question, stating that Plaintiff Immel was disabled as defined by applicable law but, in her explanation of the nexus between Plaintiff Immel's disability and the function of a therapy animal provides, she wrote, "The animal must connect to her needs and be able to sooth her when she is having panic attacks or high anxiety. It must sense her fear and be a constant companion. It should be with her 100% of the time. Victoria will rely upon the animal like a best friend, confident, counselor, husband – all in one." In answering the type of animal to be required, Ms. Melegari did not describe a type of animal but, instead, described a very particular animal as follows: "She is a fifteen (15) pound quiet dog that will be a constant companion for Victoria sensing when she feels anxiety or panic. Offering a sense of protection and companionship." Moreover, in the telefacsimile cover sheet which accompanied Ms. Melegari's answers to the reasonable accommodation request, Ms. Melegari confirmed the fact that Plaintiff Immel already had a dog by the name of Millie and identified Millie as her emotional support animal.

22. The averments of Paragraph 22 are partially admitted and partially denied. It is admitted that the Defendant Amore, in a letter dated May 11, 2016, posed additional questions to Ms. Melegari. The letter, however, was preceded by two other letters which prompted the forwarding of the letter of May 11, 2016.

On April 15, 2016, Defendant Amore had communicated with Ms. Melegari regarding comments made in Ms. Melegari's correspondence of April 7, 2016. On April 22, 2016, Ms. Melegari responded to Defendant Amore's letter for April 15, 2016. Ms. Melegari could not

confirm whether Plaintiff Immel's proposed emotional support animal, upon whom in Ms. Melegari's opinion she needed 100% of the time, was in fact with her at her place of employment. Ms. Melegari also confirmed she had not personally observed interaction between Plaintiff Immel and her dog, Millie, to determine whether Millie was the type of animal which met the criteria which she had outlined to Defendants was critically needed by Plaintiff Immel, that being one which must be able to connect to Plaintiff Immel's needs, be able to soothe her during a panic attack or anxiety, one which could sense her fear, and one which would be a constant companion 100% of the time. The letter for May 11, 2016 also asked additional questions regarding Plaintiff Immel's first presence at Fifth-Neville Apartments as the date in Ms. Melegari's correspondence was inconsistent with Defendants' records which also raised an issue of whether or not the dog had been living at Fifth-Neville Apartments.

23. The averments of Paragraph 23 are partially admitted and partially denied. It is admitted that Ms. Melegari's reply of May 25, 2016 clarified that Plaintiff Immel was not taking her dog to work as the employer had deferred to the Defendants as to whether or not Plaintiff Immel could bring her dog to work. Ms. Melegari also confirmed that the dog was not living with Plaintiff Immel. Interestingly, Ms. Melegari, in relation to her not have ever observed the dog and Ms. Immel interact, indicated that "prior to pursuing approval for her companion animal, there was no reason for me to act with the dog" which made no sense to Defendants since Ms. Melegari's alleged first contact with Plaintiff Immel was on March 11, 2016 and in relation to her request for a reasonable accommodation.

To the contrary, it is denied that Ms. Melegari stated in her letter of May 25, 2016, as set forth in the First Amended Complaint, that Plaintiff Immel had lived at Fifth-Neville since 2012. Instead, the letter stated the following: "You have assumed the dog is living with her, however, if

one was, we would not be going through the steps to gain permission to have a companion animal live with her;" "She has been a resident of Fifth-Neville Apartments since 2013;" "Prior to pursuing approval for her companion animal there was no reason for me to interact with the dog. I will make an appointment with her soon to assess her and her dog." The last part of her letter stating that prior to pursuing approval for her companion animal there was no reason to interact with the dog made little or no sense to Defendants as previously stated.

24. The averments of Paragraph 24 are denied. By way of further pleading, neither Ms. Montgomery or Ms. Melegari ever indicated that Plaintiff Immel suffered from a mental impairment that substantially limited one or more of her major life activities. Moreover, neither Ms. Montgomery nor Ms. Melegari, in a meaningful manner, explained the nexus between Plaintiff Immel's disability and the function the companion animal would provide. These two (2) issues are the critical aspects in making a determination as to whether to approve or disapprove a tenant's request for a reasonable accommodation.

25. The averments of Paragraph 25 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial. By way of further pleading, Defendant Amore never denied Plaintiff Immel's request for reasonable accommodation.

26. The averments of Paragraph 26 are admitted to the extent Defendant Amore was exercising the managerial responsibility of responding to Plaintiff Immel's request for a reasonable accommodation.

27. The averments of Paragraph 27 are partially admitted and partially denied. It is admitted that in June 2016, Plaintiff Immel moved with Dylan Knight to Lindenbrooke Apartments. Mr. Knight was employed at Lindenbrooke as floater performing leasing,

maintenance, and management duties. Lindenbrooke is a different property then Fifth-Neville and is owned by a different owner than Fifth-Neville but is managed by Defendant Amore. It is admitted that Lindenbrooke is an apartment complex which allows pets. Plaintiff Immel was permitted to have her dog live with her at Lindenbrooke.

28. The averments of Paragraph 28 are partially admitted and partially denied. It is admitted that Plaintiff Immel's request to be allowed an emotional support dog is still pending. Ms. Melegari indicated that she was going to meet with Plaintiff Immel and make a report to assess whether Plaintiff Immel's dog was one which connected with Plaintiff Immel's needs, soothe her when she was having a panic attack or high anxiety, and was one which would sense her fear. Ms. Melegari's follow up report was never received. It is admitted that Plaintiff Immel's dog is considered by Defendant Amore to be a pet and is subject to the same policies regarding ordinary pets. To the contrary, however, it is denied that Plaintiff Immel's dog is prohibited to be with her in all common areas in Lindenbrooke but, instead, is allowed to be with her in some, but not all, of the common areas of Lindenbrooke. Plaintiff Immel, for example, asked that the dog be allowed to accompany her to the swimming pool area, which request was denied.

29. The averments of Paragraph 29 are denied. To the contrary, however, Defendants are without information or belief to form an opinion as to whether Plaintiff Immel, who now resides with her pet dog, suffered or continues to suffer or in the future will suffer irreparable loss and injury, including, but not limited to, humiliation, embarrassment, emotional distress, anxiety, and a depravation of her right to equal housing opportunities and strict proof thereof, if relevant, is demanded at the time of trial.

30. The averments of Paragraph 30 are denied.

*Fair Housing Partnership*

31. The averments of Paragraph 31 are denied. To the contrary, however, Defendant Amore is without knowledge or information sufficient to form a belief as to the truth of the averments that its actions in any way have cause harm to the Fair Housing Partnership or that its actions have interfered with the efforts and programs of the Fair Housing Partnership or that the Fair Housing Partnership has devoted resources to identifying Defendant Amore's alleged unlawful housing practices, all of which allegations it denies.

32. The averments of Paragraph 32 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

33. The averments of Paragraph 33 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

34. The averments of Paragraph 34 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

35. The averments of Paragraph 35 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment that Fair Housing Partnership in July of 2015 conducted audit testing of Amore properties. By way of further pleading, it is denied that Amore developed and put into place a process whereby individual housing projects Amore managed would first grant reasonable requests for accommodations contingent upon receiving approval of Amore's corporate office. To the contrary, all requests for emotional support dogs from existing tenants would be submitted to the

property which in turn would forward that request to the corporate office for processing. In the case of requests by prospective tenants, the prospective tenant's application and request for reasonable accommodation were sent to the corporate office for approval. All prospective tenants had to pass a tenant screening criteria for acceptance which screen and tenant selection was processed by an independent third party. If the prospective tenant was approved by the third party, then the corporate office would process the reasonable accommodation request. To the contrary, Defendants never masked "an alleged practice of denying emotional support dogs" as set forth in the First Amended Complaint.

36. The averments of Paragraph 36 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof, if relevant, is demanded at the time of trial.

37. The averments of Paragraph 37 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to whether Fair Housing Partnership conducted further testing of Fifth-Neville and strict proof thereof is demanded at the time of trial.

38. The averments of Paragraph 38 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof is demanded at the time of trial.

39. The averments of Paragraph 39 are denied. To the contrary, however, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and strict proof thereof is demanded at the time of trial.

40. The averments of Paragraph 40 are denied.

**CAUSE OF ACTION – 42 U.S.C. §3604(f)(2) and 42 U.S.C. §3604(f)(3)(B)**

41. The averments of Paragraphs 1 through 41 of Defendants' Answer to Plaintiffs' First Amended Complaint are incorporated herein by reference as if more fully set forth herein.

42. The averments of Paragraph 42 represent a conclusion of law or fact to which a response is not required. If it is later judicially determined that a response should have been filed, the averments are specifically denied.

**FIRST AFFIRMATIVE DEFENSE**

43. The First Amended Complaint fails to state a cause of action or claim for which relief may be granted as against the Defendants.

**SECOND AFFIRMATIVE DEFENSE**

44. Plaintiffs are not entitled to a finding by the Court that the Defendants have violated the provisions of the Fair Housing Act because managers and owners of real property have an obligation and a right to make relevant inquiries to determine an individual's eligibility to request and receive a reasonable accommodation based on an alleged hardship or disability. Plaintiff Immel disrupted this process by not responding to the Defendants' request for information and, instead, Plaintiffs filed this action.

**THIRD AFFIRMATIVE DEFENSE**

45. Plaintiffs are not entitled to a finding by the Court that Defendants have violated the provisions of the Fair Housing Act because managers and owners of real property have an obligation and a right to have an individual who seeks a reasonable accommodation establish a link between the Plaintiff's disability and the need for the service provided by the animal. Defendants asked Plaintiff Immel to provide this link but Plaintiff Immel disrupted the process

by failing to respond to the Defendants' request for information regarding this link and the animal's ability to provide the service needed and, instead, Plaintiffs instituted this action.

**FOURTH AFFIRMATIVE DEFENSE**

46. Plaintiffs are not entitled to a finding by the Court that Defendants violated the provisions of the Fair Housing Act because Defendants have a duty in considering the issuing and granting of requests for a reasonable accommodation under the Fair Housing Act the applicant who seeks such accommodation are individuals who have a mental impairment that substantially limits one or more major life activities. A major life activity is defined by the Fair Housing Act to mean functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. Plaintiffs never provided Defendants with a record that Plaintiff Immel's alleged "mental illness" was a condition or disorder that substantially limited one or more of Plaintiff Immel's major life activities before the filing of this action.

**FIFTH AFFIRMATIVE DEFENSE**

47. Plaintiffs are not entitled to a finding by the Court that Defendants have violated the provisions of the Fair Housing Act where a Defendants' denial of a request for reasonable accommodation is issued to a person who is not disabled or where there exists no disability-related need for the requested accommodation. In order to obtain the information to make this determination, Defendants may request reliable disability related information that (1) is necessary to verify that the person meets the Act's definition of disability (i.e., has a mental impairment that substantially limits one or more major life activities); (2) describes the needed accommodation; and (3) shows the relationship between the person's disability and the need for the requested accommodation. Plaintiffs never let the Defendants complete this process prior to

filing this action as Plaintiff Immel failed to provide to the Defendants legitimate request for information they had requested from her medical provider her evaluation as to whether the proposed accommodation being sought by Plaintiff Immel was needed to accommodate her disability.

**SIXTH AFFIRMATIVE DEFENSE**

48. Plaintiffs are not entitled to a finding by the Court that Defendants have violated the provisions of the Fair Housing Act as Defendants are expected to use due diligence in reviewing such requests which, according to the Joint Statement of the Department of Housing and Urban Development and the Department of Justice, "Reasonable Accommodations under the Fair Housing Act" dated May 17, 2004 includes that where a disability is not obvious, a housing provider may request reliable disability information from reliable sources who are in a position to know about the individual's disability." Pg. 13-14.

Defendants are of the opinion it was, at all times relevant hereto, properly requesting legitimate information from third parties to fulfill its obligations under the aforesaid Joint Statement regarding reliability of information regarding whether a disability existed, a description of the needed accommodation, and information showing the relationship between the person's disability and the need for the requested accommodation.

**SEVENTH AFFIRMATIVE DEFENSE**

49. Plaintiffs' claims are barred from recovery as Plaintiffs lack standing to sue.

**EIGHTH AFFIRMATIVE DEFENSE**

50. Plaintiffs' claims are barred from recovering by the doctrines of waiver and/or estoppel.

**NINTH AFFIRMATIVE DEFENSE**

51. Plaintiffs' claims are barred from recovering by the doctrine of accord and satisfaction.

**TENTH AFFIRMATIVE DEFENSE**

52. Plaintiffs' claims are barred from recovery by the doctrine of lack of standing.

**ELEVENTH AFFIRMATIVE DEFENSE**

53. Plaintiffs' claims are barred from recovery by the doctrine of unclean hands.

**TWELFTH AFFIRMATIVE DEFENSE**

54. Plaintiffs' claims are barred from recovery by their failure to mitigate damages.

**THIRTEENTH AFFIRMATIVE DEFENSE**

55. Plaintiffs' claims are barred because they have not suffered an ascertainable loss.

**FOURTEENTH AFFIRMATIVE DEFENSE**

56. Plaintiffs' claims are barred by fraud.

**FIFTEENTH AFFIRMATIVE DEFENSE**

57. Any damages or injury Plaintiffs claim to have sustained were caused by their own acts and/or omissions or the acts of third parties over whom Defendants have no authority or control.

**SIXTEENTH AFFIRMATIVE DEFENSE**

58. Plaintiffs have not sufficiently alleged, and cannot establish, malice or willfulness on the part of the Defendants.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

59. Plaintiffs' claims are barred because all actions of Defendants were proper, privileged, justified, and undertaken in good faith.

## EIGHTEENTH AFFIRMATIVE DEFENSE

60. Defendants acted with due care at all times and complied with all applicable laws, regulations, statutes, and standards and otherwise acted reasonably.

## NINETEENTH AFFIRMATIVE DEFENSE

61. Defendants hereby give notice of their intent to rely on any other defenses that may become available and apparent during discovery proceedings in this matter and reserve the right to amend their Answer to assert any such defense.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request this Honorable Court to dismiss Plaintiffs' First Amended Complaint and specifically find that Defendants did not violate the Fair Housing Act, 42 U.S.C. §3601 *et seq.*; deny Plaintiffs any affirmative relief; deny Plaintiffs any permanent injuries against the Defendants from discriminating against individuals in violation of the Fair Housing Act; deny Plaintiffs punitive and compensatory damages; and deny Plaintiffs counsel fees and costs.

## COUNTERCLAIM

62. The averments of Paragraphs 1 through 42 of the Answer and Paragraphs 43 through 61 of the Affirmative Defenses are incorporated herein as though more fully set forth herein.

63. Defendants, in having to defend this action, will incur counsel fees and costs.

64. The provisions of the Fair Housing Act provide that the prevailing party in an action brought pursuant to the Fair Housing Act may seek to be awarded its reasonable counsel fees and costs as part of the costs of the case. 42 U.S.C. §3613(c)(2).

65. Defendants believe that they have good faith defenses to the action brought by the Plaintiffs.

WHEREFORE Defendants demand judgment in favor of the Defendants and against the Plaintiffs on Plaintiffs' First Amended Complaint and respectfully request upon the dismissal of the First Amended Complaint or a verdict being entered against the Plaintiffs that the Court award to the Defendants their reasonable attorney's fees and costs expended in the defense of this action.

Respectfully submitted:

CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.

Date: March 10, 2017

By: /s/ Jordan D. Cunningham
Jordan D. Cunningham, Esquire
PA Supreme Court I.D. No. 23144
2320 N. Second Street
Harrisburg, PA 17110
Telephone: 717-238-6570

**UNITED STATES DISTRICT COURT**
**for the**
**Western District of Pennsylvania**

| | | |
|---|---|---|
| **VICTORIA IMMEL and FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH,** | : | |
| **Plaintiffs** | : | **Civil Action No. 16-1465** |
| **v.** | : | |
| **AMORE LIMITED PARTNERSHIP d/b/a AMORE MANAGEMENT COMPANY and FIFTH-NEVILLE APTS INC.,** | : | |
| **Defendants** | : | |

**CERTIFICATE OF SERVICE**

I do hereby state that on the 10th day of March 2017, I served a true and correct copy of the foregoing in the above captioned matter, via email or by placing the same in the United States mail, first-class, postage prepaid, in Harrisburg, Pennsylvania, addressed to:

Carlos R. Diaz, Esquire
Ian Brown, Esquire
Stewart, Murray & Assoc. Law Group, LLC
437 Grant Street, Suite 600
Pittsburgh, PA 15219
cdiaz@smalawgroup.com

/s/ Angela L. Hewitt
Angela L. Hewitt,
Legal Assistant